[No. E003990. Fourth Dist., Div. Two. June 29, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER J. McNULTY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, V and VI.

**COUNSEL**

Peter J. McNulty, in pro. per., and Gordon H. Frevel, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Robert M. Foster, and John T. Swan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HEWS, Acting P. J.**—Defendant was charged and convicted by a jury of three counts of pimping (Pen. Code, § 266h),[1] three counts of pandering (§ 266i), one count of conspiracy to commit pimping and one count of conspiracy to commit pandering (§ 182).

The court sentenced defendant to prison for a total of eight years, the maximum allowable term. There were no factors in aggravation or mitigation so the court gave him the midterm of four years as to one count and four years consecutive thereto as to three of the remaining counts, restrained only by the double-the-base-term prohibition of section 1170.1, subdivision (g). Defendant had no prior felony arrests.

Defendant appeals, contending: (1) the court should have instructed the jury that pimping was a specific intent crime; (2) the court should have instructed sua sponte that section 647, subdivision (b), soliciting or engaging in prostitution, is a lesser included offense of section 266h; (3) the court committed error in failing to instruct sua sponte on CALJIC No. 2.23; (4) the mandatory minimum penalty of three years in state prison for conviction of section 266h and section 266i is unconstitutionally cruel and/or unusual punishment as was the eight-year prison sentence; (5) the court improperly used "multiple victims" as one of the bases for imposition of consecutive sentences; and (6) the trial court abused its discretion by imposing a restitution fine of $10,000. We reject defendant's contentions and affirm.

FACTS

Defendant created an organization called "Sincerely Yours" under the guise of an escort service and ran it as an "out call" prostitution business. He ran newspaper ads for "escorts" by which he obtained at least some of the employees who worked for him. He interviewed prospective employees personally and as part of the interview process paid them for sexual intercourse with him. He did this to screen out any undercover law enforcement officers and to insure that the potential employees would perform adequately as prostitutes.

Defendant advertised his business in the telephone directory yellow pages under "Massage" and "Escort." The ads stated, among other things, "Our specialty is your pleasure." Defendant had a phone system set up in which he or an assistant would first receive a call from a potential customer. An

---

[1] Unless otherwise indicated, all section references in this opinion are to the Penal Code.

employee would then be notified and she would call the customer using the phone script prepared by defendant. The employee would notify defendant or the other person overseeing the business at the time of the arrangements. When the employee arrived at the customer's private residence, hotel or motel room, she was to first obtain payment from the customer. Upon obtaining payment, she would call defendant or the other person overseeing the business at that time. The employee would give notice of receipt of payment and the length of time for which her services had been paid. Defendant or the other person overseeing the business at that time would then notify the employee of the expiration of the time by signalling her on a beeper carried by the employee.

Defendant had each employee sign a contract containing terms stating that she was not to offer or engage in sex for pay with any customers. Defendant denied any personal knowledge that any of his employees ever engaged in sexual intercourse with any customer. He further testified that he terminated any employee who was reported to be having sex with a customer. Defendant employed between 50 and 100 women during the two-and-a-half-year period of operation. More than 500 call slips were seized at his residence which identified the woman employee, the customer, which employee took the call, time and date of the call, and related financial information. He handled between 50 to 150 calls per month and he received one-quarter or more of the payment which the employee received from the customer at the rate of $200 per hour.

I

### The Trial Court Was Not Required to Instruct That Pimping Is a Specific Intent Crime

Defendant contends the trial court committed error in refusing to instruct the jury that pimping is a specific intent crime. He claims pimping requires at least "the specific intent to solicit earnings from prostitution."

We commence our discussion with the observation that " 'when the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.' " (*People* v. *Daniels* (1975) 14 Cal.3d 857, 860 [122 Cal.Rptr. 872, 537 P.2d 1232], quoting *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370].)

The crime of pimping set forth in section 266h provides: "Any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution, or from money loaned or advanced to or charged against that person by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, or who solicits or receives compensation for soliciting for the person, is guilty of pimping, a felony, . . ."

■ Thus, section 266h can be violated in either of two basic ways: (1) by *deriving support* from the earnings of another's act of prostitution or (2) by *soliciting*. In order to violate the statute by soliciting, there must be *either* the receipt of compensation for soliciting for a prostitute *or* the solicitation of compensation for soliciting for a prostitute. (*People* v. *Smith* (1955) 44 Cal.2d 77, 79 [279 P.2d 33].)

■ The court instructed the jury on the crime of pimping by quoting verbatim from section 266h. The court further instructed that pimping was a general criminal intent crime. (CALJIC No. 3.30 (4th ed. 1979).) The court did not list the elements of the crime that had to be proved in order to prove the commission of the crime as set forth in CALJIC No. 10.61 (4th ed. 1987 pocket pt.). One of the elements suggested therein for violation of section 266h by solicitation in either way requires a specific intent "to obtain compensation for soliciting customers for the prostitution services of the other person."

■ In regard to the first basic way to violate the statute, deriving support with knowledge that the other person is a prostitute is all that is required for violating the section in this manner. No specific intent is required. (*People* v. *Smith, supra,* 44 Cal.2d 77, 79.)

■ Under the first alternative to pimping by soliciting (receiving compensation), combining the specific intent from the suggested CALJIC No. 10.61 instruction with the language from *Smith* would result in the offense requiring "the receipt of compensation for soliciting for a prostitute" with the specific intent "to obtain compensation for soliciting customers for the prostitution services of the other person." (*People* v. *Smith, supra,* 44 Cal.2d 77; CALJIC No. 10.61.) This goes beyond the requirement of the statute. Receiving compensation for soliciting with knowledge that the other person is a prostitute is the only requirement under the first alternative of violating section 266h by solicitation.

Under the second alternative to pimping by soliciting (soliciting compensation), the addition of the specific intent language of CALJIC No. 10.61

would result in violation of section 266h "by soliciting compensation for soliciting for a prostitute" with the specific intent "to obtain compensation for soliciting customers for the prostitution services of the other person." This goes beyond the requirement of the statute. Under this definition, no crime is committed if one solicits compensation for soliciting customers for the prostitute when one does not intend to receive the compensation. We hold if the accused has solicited for the prostitute and has solicited compensation even though he had not intended to receive compensation, he would nevertheless be guilty of pimping.

Pimping in all its forms is not a specific intent crime.

## II, III*

. . . . . . . . . . . . . . . . . . .

## IV

### The Minimum Penalties of Three Years for Convictions of Pimping and Pandering Are Not Unconstitutionally Cruel or Unusual Punishment nor Was the Eight-year Prison Sentence

■ Defendant contends that the three-year minimum sentences for pimping and for pandering are unconstitutional as cruel and/or unusual punishment under the Eighth Amendment to the United States Constitution, and article I, section 17, of the California Constitution. Sections 266h and 266i set the punishment for pimping and for pandering at three, four or six years. Section 1203.065, subdivision (a), prohibits the granting of probation for conviction of either pimping or pandering.[4]

■ In accord with the doctrine of separation of powers, a court cannot lightly encroach upon matters within the domain of the Legislature. (*People v. Wingo* (1975) 14 Cal.3d 169, 174 [121 Cal.Rptr. 97, 534 P.2d 1001].) ■ When reviewing legislation alleged to impose cruel and unusual punishment, the court must uphold statutes unless their unconstitutionality clearly, positively, and unmistakably appears. (*Ibid.*)

"Where reasonable men might differ over a penalty, the courts '. . . must defer to the Legislature, for it has the "broadest discretion possible . . . in

---

*See footnote, *ante,* page 624.
[4]Section 1203.065, subdivision (a), provides: "(a) Notwithstanding any other provision of law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any person convicted of violating . . . Section 266h, or Section 266i, . . ."

specifying punishment for the crime." ' (*In re Foss* (1974) 10 Cal.3d 910, 937 [112 Cal.Rptr. 649, 519 P.2d 1073] quoting *In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921].) Fitting a penalty to a crime is not an exact science; it involves appraising the evil to be corrected, weighing alternatives, considering policy and responding to the public will. Leeway is permissible. *In re Lynch, supra,* 8 Cal.3d at p. 423.) The test is whether the punishment is 'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' (*Id.,* at p. 424.)" (*People* v. *O'Connor* (1986) 188 Cal.App.3d 645, 648 [233 Cal.Rptr. 529]; see also *People* v. *Dillon* (1983) 34 Cal.3d 441, 478 [194 Cal.Rptr. 390, 668 P.2d 697].)

■ Three recent opinions, two of which are from division one of this district, have held that the pimping and pandering statutes do not impose inherently cruel and unusual punishment. (*People* v. *O'Connor, supra,* 188 Cal.App.3d 645 [pandering]; *People* v. *Jeffers* (1987) 188 Cal.App.3d 840 [233 Cal.Rptr. 692] [pimping and pandering]; *People* v. *Almodovar* (1987) 190 Cal.App.3d 732 [235 Cal.Rptr. 616] [pandering].) We agree.

■ In *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], the Supreme Court identified a number of criteria useful in determining whether a particular sentence was so disproportionate to the crime as to constitute cruel and unusual punishment. These included (1) considering both "*the nature of the offense and/or the offender* with particular regard to the degree of danger both present to society," (2) comparing "the challenged penalty with the punishments prescribed in the *same jurisdiction for different offenses,* " and (3) "a comparison of the challenged penalty with the punishments prescribed for the *same offense in other jurisdictions* having an identical or similar constitutional provision." (*In re Lynch, supra,* 8 Cal.3d at pp. 425-427; italics added.)

In regard to the first prong of the *Lynch* test, defendant argues that pimping and pandering are not serious crimes. The opinion of the Legislature is to the contrary. ■ The purpose of the antipandering statute is to " 'cover all the various ramifications of the social evil of pandering and include them in the definition of the crime, with a view of effectively combating the evil sought to be condemned.' " (*People* v. *Fixler* (1976) 56 Cal.App.3d 321, 327 [128 Cal.Rptr. 363].) Moreover, the antipandering statute and the antipimping statute were both designed to discourage prostitution by discouraging persons other than the prostitute from augmenting and expanding a prostitute's operation or increasing the available supply of prostitutes. (*People* v. *Hashimoto* (1976) 54 Cal.App.3d 862, 867 [126 Cal.Rptr. 848].) The panderer commonly preys on very young women. Many in this group have experienced difficulties in the home, in school, or

on the job, or have become dependent on drugs, making them particularly vulnerable to the panderer's promises of easy money. (Jennings, *The Victim as Criminal: A Consideration of California's Prostitution Law* (1976) 64 Cal.L.Rev. 1235, 1252.)

█ Whether or not this court agrees with the legislative choice here, the Legislature was not irrational or arbitrary in determining pandering and pimping were so dangerous to society as to justify a three-year minimum penalty to deter its practice.

█ In addition to the consideration of the nature of the offense involved, we must also consider "the nature of the offender" to determine if the punishment in question also fails to fit the criminal. (*People* v. *Dillon, supra,* 34 Cal.3d at p. 479.) In this regard, courts determine whether the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.

█ The record reveals that defendant was a sophisticated operator of an out-call prostitution business from which he received substantial profits over a long period of time. He had been warned by authorities not to continue operation of his business and he continued to do so. He was not your usual pimp who operated with two or three women on the street. Defendant's sentence was not grossly disproportionate to his culpability despite the fact that these were his first felony convictions.

Turning to the second prong of the *Lynch* test, we compare the penalty for pimping and pandering with the penalty imposed in this state for other crimes and we are led to the same conclusion. In *People* v. *Madden* (1979) 98 Cal.App.3d 249 [159 Cal.Rptr. 381], the court upheld a minimum three-year prison sentence for selling or offering to sell more than one-half ounce of heroin. Defendant was a heavy heroin user and was only selling the drug to support her own habit; however, she was ineligible for probation under section 1203.07. As the court noted, "the crime . . . does not involve direct violence to another person . . . ." (*Id.,* at p. 255.) However, the court upheld the constitutionality of the prohibition against granting probation under *Lynch.*

Similarly, in *People* v. *Main* (1984) 152 Cal.App.3d 686 [199 Cal.Rptr. 683], an 18-year-old was convicted of robbery with a firearm. He was ineligible for probation under section 1203.06 and was sentenced to a three-year state prison term. The court, using the *Lynch* test, upheld the mandatory sentence despite the fact that defendant was young and unsophisticat-

ed, had no prior criminal record of note, the gun was inoperable and not loaded, together with other mitigating circumstances.

██ Thus, three-year mandatory state prison sentences have been approved for selling heroin and for using an inoperable firearm during a robbery—crimes arguably comparable to pandering or pimping. The penalty satisfies the second prong of the *Lynch* test. (*People* v. *O'Connor, supra,* 188 Cal.App.3d at p. 649.)

The third prong of the *Lynch* test requires us to compare the punishments for the same crime in other states with the punishment imposed in California.

Defendant contends no other state denies probation eligibility for first-time violations of pimping and pandering statutes and further that no other state has a mandatory minimum prison sentence for pimping or pandering. However, the Commonwealth of Massachusetts also imposes a mandatory two-year minimum sentence for an individual convicted of pandering before probation eligibility. (Mass. Gen. Laws Ann., ch. 272, § 7 (West 1986).) ██ "Further, even if California's punishment may be more severe than other states' insofar as mandating three-year minimum incarceration for adult offenders, the mere fact 'a majority of other states impose a less severe penalty is not enough to show cruel or unusual punishment.' (*People* v. *Main, supra,* 152 Cal.App.3d at p. 696.) The *Lynch* 'techniques are not mechanical—they are not conclusive or dispositive—but only grounds for suspecting the constitutionality of the statute.' (*Bosco* v. *Justice Court* (1978) 77 Cal.App.3d 179, 189 [143 Cal.Rptr. 468].) *Lynch* authorizes 'constitutional interference' only where the California penalty is grossly excessive compared to the rest of the nation. (*In re Maston* (1973) 33 Cal.App.3d 559, 566 [109 Cal.Rptr. 164].) ██ California's penalties for pimping and pandering are not the nation's most severe. California's eight-year maximum punishment for the crimes is less severe than numerous other states' maximum terms. For example, Delaware's maximum is 30 years. (Del. Code Ann., tit. 11, §§ 1353, 4205 (1984).) Twenty years is the maximum in Idaho (Idaho Code, § 18-5602 (1986)), Michigan (Mich. Comp. Laws Ann., § 750.455 (West 1986)) and Montana (Mont. Code Ann., § 45-5-603 (1986)). California's penalties are not grossly excessive or disproportionate compared to those of other states. Moreover, even if California's absolute ban of probation were deemed suspect under the third prong of *Lynch,* such punishment is not so disproportionate under the first and second prongs as to be unconstitutional. (*Bosco* v. *Justice Court, supra,* 77 Cal.App.3d at p. 189.)" (*People* v. *Jeffers, supra,* 188 Cal.App.3d 840, 857-858.)

Section 1203.065, subdivision (a)'s absolute ban on probation and sections 266h's and 266i's three-year minimum prison terms for pimps and panderers is not cruel or unusual.

■■■ Defendant claims his total sentence of eight years in prison is so disproportionate to his individual culpability as to constitute cruel and unusual punishment. His claim is without merit. He contends that if he had committed an aggravated armed robbery and received the upper term, he would have done less time in prison. However, defendant's sentence of eight years resulted from convictions on eight separate counts. On one count, he was sentenced to the midterm of four years. For an additional seven convictions carrying the same midterms, he received only an additional four years' incarceration. Without the double-the-base-term restrictions of the determinate sentencing law, his sentence would have been 13½ years. The total sentence of eight years for convictions on eight separate charges is not "so disproportionate to the crime[s] for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. . . ." (*In re Lynch, supra,* 8 Cal.3d at p. 424.) Defendant's sentence of eight years for conviction on eight separate charges was neither cruel nor unusual.

### V, VI*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

The judgment is affirmed.

Dabney, J., concurred.

A petition for a rehearing was denied July 15, 1988, and appellant's petition for review by the Supreme Court was denied September 29, 1988.

---

*See footnote, *ante,* page 624.