[Crim. No. 2105. Third Dist. Mar. 22, 1949.]

THE PEOPLE, Respondent, v. RICHARD CORONADO et al., Defendants; JOHN MONTEIRO, Appellant.

Clifford R. Lewis and McGilvray & McGilvray for Appellant.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

THOMPSON, J.—The defendant John Monteiro has appealed, under section 1237 of the Penal Code, from an order denying his motion for new trial. He was jointly charged with Richard Coronado, in the fourth count of an information, and convicted by a jury, of the crime of pimping, committed contrary to the provisions of the statutes of 1911, page 10, as amended in 1921, at page 96. (1 Deering's Gen. Laws, Act 1907, p. 856, Appendix to Penal Code, pt. 3, p. 750.) The charge of pimping consisted of deriving support and maintenance, in part, from earnings from prostitution of a known prostitute. A portion of said receipts was expended by the appellant in purchasing oil and gas for his automobile. A motion for new trial was denied. On motion of the appellant the judgment was suspended and he was granted probation. The conviction of the codefendant is not involved on this appeal.

The appellant contends: That the court erred in denying his motion for new trial, because there is a lack of evidence to support the verdict; that he received his pay for conveying the woman in question and her friend, Coronado, in his automobile, to and from a labor camp at Woodland and a Chinese

camp south of Sacramento, without knowledge that she was a prostitute or that their missions at those camps were for the purpose of engaging in prostitution; that his income was adequate from other legitimate sources to fully pay for his support and maintenance and that there was therefore a lack of evidence to support the finding that he *derived* his support or maintenance, in part, or at all, from the earnings of prostitution.

 There is a conflict of evidence regarding the essential elements of the crime of pimping. We are of the opinion the evidence is adequate to support the verdict and order denying appellant's motion for new trial. The statute, as amended in 1921, which defines and prohibits pimping, reads in part:

"1. Any male person who, knowing a female person to be a prostitute, shall live or derive support or maintenance in whole or in part, from the earnings or proceeds of the prostitution of such prostitute, . . . shall be guilty of a felony, to wit: pimping, . . . ."

The evidence shows the appellant is a discharged member of the United States Navy, and that he receives a pension from the government of $55 per month. He lived with his mother and stepfather at Sacramento, and paid them $15 per week for board and room. When he was short of funds he paid them less. He was a friend of the codefendant, Coronado. He owned an automobile, for the purchase price of which he borrowed $250 from a local bank, upon which indebtedness he was paying $22 per month. He had been employed by the Campbell Soup Company in Sacramento for about two months, for which services he received $1.20 per hour, or about $42 per week.

The young woman who is involved in this case was a 16-year-old school girl. She came to Sacramento and met Coronado, a barber, who seduced her and induced her to become a prostitute. He was a friend of this appellant. She subsequently regularly engaged in prostitution for pay. June 12, 1948, as the appellant, Monteiro, was driving his car in Sacramento, he was hailed by Coronado and introduced to the woman. He was told she was engaged in prostitution. The woman testified that Monteiro took them in his car to her home; that all three discussed a sort of joint enterprise, and agreed to go together, and two days later went in his car to a labor camp on King's ranch near Woodland, and later to a Chinese camp south of Sacramento, where she promiscuously engaged in prostitution with Filipinos and Chinese laborers, for which

she was paid $5.00 for each act of intercourse; that she turned her receipts over to her friend Coronado, and that it was agreed between the three persons that Monteiro would be paid from her earnings the sum of $1.00 for each act performed, as his share of the proceeds for the use of his car and his services. Under that arrangement he took them to both camps where he was paid by Coronado at least the total sum of $10. He was present and knew that the prostitution was going on. The woman testified that she heard the discussion between the men regarding Monteiro's share of the proceeds and knew the money was paid to him at that time. Monteiro testified that he spent that money, or a part of it, the following day to replenish the oil and gas which was consumed in that enterprise. Clearly the appellant knew that the woman was a prostitute; that she received the money in question from said prostitution, and that the payments to him were made directly from her earnings from said prostitution. It follows that the money which he received from the prostitute's earnings were applied, in part, to his support and maintenance.

It has been held the statute in question contemplates two types of pimping. One type is defined as, when a man *lives* from the earnings of a known prostitute. The other is, when the accused person *derives his support or maintenance,* in whole or *in part,* from the earnings of a known prostitute. (Note, 74 A.L.R. 337.) In the present case both types of pimping were charged. The evidence supports the latter. No demurrer to the information for uncertainty, or at all, was filed. It has been held that, upon conviction for pimping, under the statute in question, for deriving "support or maintenance" in part from the earnings of a known prostitute, the judgment should be affirmed when the evidence shows that: 1. The accused person is a male person; 2. He had knowledge that the woman is a prostitute; 3. Her earnings in question were secured from her prostitution, and 4. He derived support, in whole or in part, from such earnings knowing his receipts were derived from her prostitution. (*People* v. *Simpson,* 79 Cal.App. 555, 559 [250 P. 403].) All of the foregoing elements are supported by the evidence in this case. The woman so testified in detail, except that she did not state that appellant spent that money for his own support. Her evidence was adequately corroborated. He admitted on cross-examination that he spent a portion of that money toward his support. She testified that he knew she was a prostitute;

that by agreement he participated in the joint adventure of going to the camps for prostitution purpose; that he knew she engaged in prostitution at those camps and received therefor the sum of $5.00 for each act of intercourse and turned the proceeds over to her associate, Coronado, who then paid appellant his agreed share of $1.00 for each act of intercourse. Regarding his application of a portion of said earnings toward his support, the appellant testified:

"Q. What did you do with this money which you took from Bob Coronado? A. I put some gas in my car the next day, changed the oil and stuff, that's all. Q. You used it as you would any other money, did you not, . . .? A. Why, it is money, that's all I know. Q. You just used it as you would any other money, did you not? . . . A. Yes, sir. Q. You mingled it and commingled it with the rest of your money, did you not? A. Yes, I had a few bucks in my pocket."

The foregoing colloquy furnishes ample evidence that appellant's support and maintenance was acquired, in part, from the earnings of a known prostitute.

The statute does not require the earnings of a known prostitute to be directly paid by her to the accused person to make him guilty of pimping. All that it requires is that he "shall . . . *derive* support or maintenance, . . . in part," thereby. In this case the appellant was paid from the identical earnings from said prostitution by specific agreement of all parties concerned. That transaction meets the requirements of the statute in that regard.

There is no merit in the contention that the appellant may not be held to have *acquired support or maintenance, in part,* for the alleged reason that his income from other legitimate sources was adequate to support him, and that the earnings of the prostitute were not applied to his *necessary* support or maintenance. The evidence in this case does not furnish satisfactory proof that his income was adequate to defray wholly the cost of his support. But even if it did establish that fact, the statute contains no such qualification or limitation. The words "*necessary* support" are not used in the act. We assume that if such earnings are received knowingly and applied to the support of the accused person, under the circumstances mentioned in the statute, he would be guilty of pimping regardless of his wealth, possessions or legitimate income from other sources. The suggestion that "Such statutes appear to be directed against a *vagrant class* of male who, disdaining other occupation, attaches himself to some prosti-

tute or prostitutes in order to secure means for his livelihood'' (42 Am.Jur. § 10, p. 267) has no apparent application to this California statute. That quotation may apply to the statutes of some other jurisdictions, but apparently it has no application to the California statute. The California act does not mention ''vagrants,'' or infer that its provisions are limited to vagrants. Clearly, the California statute is intended to define and prohibit the loathsome practice of pimping as distinguished from the equally obnoxious practice of pandering. We do not think the act was intended to favor opulent pimps over impecunious ones. Both are harmful to good morals and the welfare of society. Indeed, the former seem more objectionable than the latter, and certainly they are more odious. We are satisfied the statute contains no such limitation of its application.

The case of *State* v. *Kanakaris*, 54 Mont. 180 [169 P. 42], upon which the appellant relies, has no application to a statute such as is involved in this case. The defendant in that case was charged under sections 8 and 9 of the Montana statute with two offenses. Section 8 prohibits the gratuitous receipt, ''without consideration'' of the earnings of a known prostitute. The question of whether such earnings contribute to the recipient's support or maintenance is not involved in that section. Section 9 prohibits pimping and defines ''pimp'' as one who ''lives with a common prostitute or who depends for his living, in whole or in part, upon money supplied by a fallen woman, *whether that money be earned in legitimate business* or derived from her unlawful occupation.'' Under the California statute the money acquired must come from the earnings of the illicit intercourse of the prostitute, and must be used toward the recipient's support or maintenance. The Montana court did say that ''By enacting section 9, the Legislature evinced a purpose to drive out of this state every vagabond.'' But that statement appears to be mere dictum. It is immaterial. The judgment was reversed in that case because the verdict found the defendant ''guilty of the crime of living upon the earnings of a woman engaged in prostitution as charged in the information,'' which was not supported by the evidence. The court said in that regard: ''The evidence tends to prove him guilty of one [offense] only, while the jury found him guilty of the other one.'' That case has no application to our statute or the facts of this case.

The other cases relied upon by the appellant are likewise

distinguishable from this case. We find no justification for the contention that statutes prohibiting pimping are enacted for the sole purpose of punishing vagrants, vagabonds or impecunious persons.

Several California cases upheld convictions for pimping under this statute for receiving the earnings of known prostitutes from which the accused persons derived support or maintenance, in part. Unfortunately, most of those cases merely state that the judgments are adequately supported by the evidence without reciting the facts. In none of those cases was the point last mentioned discussed. We have found no case which supports the contention of appellant in that regard. We think that construction is unsound and not supported by the language of our statute.

For the foregoing reasons the order denying appellant's motion for new trial is affirmed.

Adams, P. J., and Peek, J., concurred.