351 So.2d 442 (1977)
STATE of Louisiana
v.
Donald D. ARNOLD.
No. 59196.
Supreme Court of Louisiana.
June 20, 1977.
On Rehearing October 10, 1977.
*443 Tilden H. Greenbaum, III, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Robert L. Simmons, Asst. Dist. Attys., Metairie, for plaintiff-appellee.
DIXON, Justice.
The defendant Donald D. Arnold was charged by bill of information with the crime of "pandering," a violation of R.S. 14:84(4). A jury of six found defendant guilty as charged. The State then filed a bill of information, pursuant to R.S. 15:529.1, charging defendant as a multiple offender. Arnold was found to be a third offender and was sentenced to a term of ten years. The defendant urges three arguments (in four assignments of error) for reversal of his conviction and sentence. Since we find merit in the final assignment, we pretermit discussion of the other assigned errors.
The facts surrounding this prosecution are as follows. On June 4, 1975 at approximately 2:30 a. m., three officers of the New Orleans Police Department were on duty in *444 plain-clothes in the French Quarter in New Orleans. While in the 500 block of Bourbon Street, one of the officers was approached by Donald Arnold who asked him if he was looking for a date. The officer replied that he was and the two men walked up Bourbon Street for approximately two blocks. The defendant stated that he did not see any of his girls at the end of the street so the two men walked back down Bourbon Street and over to Royal. Arnold and the officer went into a bar on Royal Street and the officer sat down while the defendant went to speak to another man. The defendant and the officer then left the bar and as they were crossing Royal Street they encountered a female who spoke with them briefly. After entering another bar, the defendant went back outside, spoke to the same female, and then told the officer that the date would cost $60.00; $50.00 for the female and $10.00 for his services in setting up the date. The officer then handed Arnold a marked $50.00 bill and a marked $10.00 bill. The officer and the female exited the bar and began walking up Royal Street. As he was walking away the officer motioned to his two partners (who had been observing his activity from a distance) that he had paid the defendant in the bar. Donald Arnold was then seized by the officers who recovered the two marked bills from his person.
After the defendant had been convicted, but prior to sentencing, he filed a motion for a new trial supported by the following allegations:
"1. The verdict is contrary to the law and the evidence in that the State failed to prove all elements of the crime charged and the evidence was insufficient to show or prove the guilt of the accused beyond a reasonable doubt.
"2. The State merely proved the crime of soliciting for prostitution (a misdemeanor) and did not prove the defendant guilty of pandering."
The trial judge denied the defendant's motion for a new trial and the defendant assigns as error that ruling of the trial judge.
Initially we note that when error is assigned to the refusal of the trial judge to grant a motion for a new trial which was based on the contention that "the verdict is contrary to the law and the evidence," nothing is presented to this court for review. C.Cr.P. 858; State v. Finley, 341 So.2d 381 (La.1976); State v. Jack, 332 So.2d 464 (La.1976). The scope of this court's appellate jurisdiction does not extend to questions of fact, and the sufficiency of the evidence is a question of fact. La.Const. art. 5 § 5(C); State v. Gordon, 336 So.2d 793 (La.1976).
However, where error is assigned to the trial judge's denial of a motion for a new trial which alleges that there is no evidence of the crime charged or of an essential element thereof, a reviewable question of law is presented. E. g., State v. Finley, supra; State v. Woods, 327 So.2d 405 (La.1976). The defendant here specifically alleges "the State failed to prove all the elements" of pandering and, instead, only proved the crime of soliciting for prostitutes (R.S. 14:83). By that allegation the defendant has properly preserved this issue for review. Cf. State v. Jackson, 344 So.2d 961 (La.1977). However, we are confined to consideration of the question of whether there was any evidence of each essential element of the crime of pandering.
Pandering, as applicable to the facts of this case, is defined as follows:
"Pandering is the intentional:
. . . . .
"(4) Receiving or accepting by a male, as support or maintenance, anything of value which is known to be from the earnings of any female engaged in prostitution;
". . ." (R.S. 14:84(4)).
The crime of soliciting for prostitutes is defined as follows:
"Soliciting for prostitutes is the soliciting, inviting, inducing, directing, or transporting a person to any place with the intention of promoting prostitution." R.S. 14:83.
*445 The Reporter's Comments to R.S. 14:86 describe the types of activities that these two statutes were designed to proscribe:
"Pandering:
"This section [R.S. 14:84] groups together several of the more serious offenses in this field, and a much more severe penalty is here suggested. These are the organizational aspects of the offense, by which the females are first lured, and then detained, in prostitution."
"Soliciting for prostitutes:
"This section [R.S. 14:83] is intended to cover some of the indispensable activities in connection with prostitution: `street-walking,' the maintenance of a system of `runners,' and the employment of cab drivers."
See also Comment, Art. 86, La.Criminal Code of 1940 (Dart's Code of Criminal Law and Procedure, Art. 740-86).
These comments and the language of the statutes reveal that the law prohibiting pandering (a relative felony) is designed to deal with the more serious activities of placing women in the practice of prostitution and receiving support and maintenance from prostitutes. By contrast, the crime of soliciting for prostitutes prohibits soliciting of males with the intention of promoting prostitution.
In order to have a valid conviction under R.S. 14:84(4) (pandering), the State must prove the following elements of the crime: (1) the intention (2) receiving and accepting by a male (3) as support or maintenance (4) anything of value (5) which is known to be from the earnings of any female engaged in prostitution. The State offered evidence that Donald Arnold, a male, did receive something of value for his services in setting up the "date." In addition, there was at least some evidence offered that the "date" was a prostitute.
However, there is no evidence in the record that the money obtained by the defendant was received as "support or maintenance." While the terms "support" and "maintenance" are not specifically defined in the Criminal Code, this court has upheld the constitutionality of R.S. 14:84(4) in the face of the contention that the statute is unconstitutionally vague for want of definitions of the terms "support" and "maintenance." In State v. Bourg, 248 La. 844, 864, 182 So.2d 510, 517 (1966), this court held:
"Bill of Exceptions No. 8 was reserved to the court's ruling denying a motion in arrest of judgment. In the motion it is declared that R.S. 14:84(4) is unconstitutionally vague and indefinite in that it does not define the meaning of the expression `support and maintenance.'
"The words `support and maintenance' as used in the statute are synonymous and have a definite meaning which persons of ordinary intelligence may easily understand. We find this bill to be without merit. State v. Wiener, 245 La. 889, 161 So.2d 755 (1964) and cases cited there."
In the case before us now, the State offered no evidence that the money Arnold was to receive for his services in setting up the date ($10.00) was to be used to support and maintain him. The fact that the defendant accepted money for his services, without more, does not constitute "some evidence" that the money was received as support or maintenance. Evidence that defendant had no other source of income except from pandering, or that he solicited often enough to raise an inference that his support and maintenance came from the practice of pandering, would have been sufficient. The receiving of anything of value and the use as support or maintenance are two separate elements of the crime of pandering. The object of the redactors of the Criminal Code was to eliminate duplication, not perpetuate it. Pandering is a different and more serious crime than soliciting for prostitution.
Since we find the record devoid of any evidence of an essential element of the crime charged, the conviction and sentence of the defendant are reversed and the case is remanded to the district court for further proceedings not inconsistent with the views expressed herein.
MARCUS and DENNIS, JJ., dissent.
SANDERS, C. J., dissents with written reasons.
*446 SANDERS, Chief Justice (dissenting).
In my opinion, there is some evidence of all the essential elements of pandering. The receipt of the money under the circumstances shown, together with defendant's admission that the alleged prostitutes are "my girls," is some evidence of the offense charged. This Court, of course, does not weigh the sufficiency of the evidence. That is a matter for the jury.
For the reasons assigned, I respectfully dissent.

ON REHEARING
CALOGERO, Justice.
On our original hearing of this case, we reversed defendant Arnold's conviction because we determined that the state had failed to prove that element of the crime of pandering[1] which requires that the male's receipt and acceptance of something of value be "as support or maintenance." Defendant Arnold had contended successfully that a single proven incident of receiving sixty dollars (ten dollars of which he had told the undercover policeman was for him) in exchange for arranging a prostitution "date," without proof of the purpose to which defendant put the money, without proof that this type of endeavor constituted defendant's sole, principal or occasional means of support, and without proof that defendant had regularly engaged in this practice, was no proof at all of his having derived "support or maintenance" from the earnings of a prostitute. In adopting defendant's position, we stated that:
"The fact that the defendant accepted money for his services, without more, does not constitute `some evidence' that the money was received as support or maintenance. Evidence that defendant had no other source of income except from pandering, or that he solicited often enough to raise an inference that his support and maintenance came from the practice of pandering, would have been sufficient."
We granted rehearing in the case because we were impressed with the state's application in which our attention was directed to the following purported summation of state law in this area:
"Under a statute making it an offense to derive support or maintenance in whole or part from the earnings of a prostitute, it has been held immaterial whether the accused be rich or have a legitimate income from other sources; he need only receive some of the money the prostitute has earned in pursuing her occupation. And it has been held not necessary that the accused actually use the money received from a prostitute for his support and maintenance." 63 Am.Jur.2d 375.
We have restudied the case, looking with particular care at the above proposition and the case which the state principally relies upon, People v. Coronado, 90 Cal.App.2d 762, 203 P.2d 862 (1949). We are of the view that our initial decision was correct.
Other states which have similar pandering statutes proscribing deriving support or maintenance from the earnings of a prostitute do not always require that the state trace the money received to its expenditure as support or maintenance. Many cases from other jurisdictions do, of course, deal with cases in which the state did indeed establish that the money received went toward particular items of support. See, for example, People v. Coronado, supra (part of money used for oil and gas for defendant's car); People v. Navarro, 60 Cal.App. 180, 212 P. 403 (1922) (money was partly used to pay defendant's room rent and board); People v. Simpson, 79 Cal.App. 555, 250 P. 403 (1926) (portion of proceeds from defendant's legitimate massage parlor business actually came from earnings of attendants for their work as prostitutes). And courts have reversed convictions on the basis that there was no evidence to show that defendant was dependent to any degree upon the money furnished by a prostitute. State v. Kanakaris, *447 54 Mont. 180, 169 P. 42 (1917). The emphasis in these other jurisdictions is not placed on tracing the actual expenditure of a particular prostitution fee in a defendant's support, but on general proof that the defendant did knowingly live off of the earnings of prostitutes (or of a prostitute). Trozzo v. People, 51 Colo. 323, 117 P. 150 (1911); People v. Simpson, supra; State v. Kanakaris, supra; 74 A.L.R. 307, 337. These opinions from other jurisdictions make it clear that the accepted rule is that such statutes as ours which generally make criminal the receipt of a prostitute's earnings by a male as his support or maintenance do require proof that he was receiving that money as support, although they do not require tracing the actual cash given to its expenditure in rent, meals, gas, etc.
Moreover, the general pattern of the criminal code sections relating to the subject of prostitution convinces us that the legislature did not intend by the language of R.S. 14:84(4) to make it a felony simply for a male to receive anything of value which is known to be from the earnings of a prostitute. In the first place, had the legislature meant to proscribe that conduct in this statute, they would not have added "as support or maintenance." Also, the legislature has classed many of the offenses connected with the practice of prostitution as misdemeanors. Thus, prostitution, R.S. 14:82, soliciting for prostitutes, R.S. 14:83, and letting premises for prostitution, R.S. 14:85, have been made misdemeanors rather than felonies. Certain offenses, which the legislature apparently deemed more serious, were classed as felonies: for example, enticing a woman into prostitution, R.S. 14:84(1), detaining a female in a place of prostitution by force, R.S. 14:84(3), and enticing minors into prostitution, R.S. 14:86. The pandering statute at issue here, R.S. 14:84(4), classifies living off the earnings of a prostitute as a felony, unlike the apparently less serious offense of solicitation for prostitution, which is a misdemeanor. We believe that this statutory pattern evidences, as we stated on original hearing, that pandering is a different and more serious crime than soliciting for prostitution, and that the most important difference is that the male must have received the money with the intention of using it as his support or maintenance. It is this element which makes the panderer liable for up to five years in the penitentiary while the solicitor can receive no heavier a penalty than a one hundred dollar fine and six months imprisonment.
In the record before us there is no evidence that defendant Arnold repeatedly (or even twice) arranged prostitution dates and received money therefor, no evidence as to whether he had ever in the past been (or currently was being) supported in whole or part by the earnings of prostitutes, no evidence that he lived with the woman with whom he set up this date or with any other prostitute, etc. There is record evidence that he received ten dollars from a single transaction in the negotiation for which defendant stated that he would try to find one of "his girls."[2] While various inferences might be taken from defendant's reference to "his girls," we cannot conclude that this reference, or admission, is any evidence at all that defendant Arnold received the ten dollars (or sixty dollars) in question for his support or maintenance.
The words "as support or maintenance" in R.S. 14:84(4) require the state, at a minimum, to introduce some evidence which establishes, or from which it can be inferred, that the defendant received the *448 earnings of a prostitute with the intention of using them as support or maintenance. Proof that defendant on one occasion received money without any evidence of his purpose in accepting the money, his past similar acts in accepting such money, or any other evidence which would go toward proving that defendant intended to receive and use the money in question to support himself does not constitute "some evidence" that the money was received as support or maintenance.
Finding no evidence of an essential element of the crime charged, we reinstate our judgment on original hearing.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent.
NOTES
[1] The crime of pandering, proscribed by Louisiana Revised Statute 14:84(4) is "the intentional . . . [r]eceiving or accepting by a male, as support or maintenance, anything of value which is known to be from the earnings of any female engaged in prostitution . . . ."
[2] The police undercover agent testified that defendant Arnold approached him on the street and the following ensued:

"The subject said, `Hello.' I said, `Hello,' back. And at that point, he asked me if I was looking for a date. I replied I was. He asked me to walk up Bourbon Street to look for one of his girls. At that point, we started walking up Bourbon Street in the 500 block and walked to the 700 block. At which time, he said he didn't see any of his girls at this end of Bourbon Street, let's go to the other end. And we walked to the 200 block and walked up to Iberville, and he said he didn't see any of his girls. He said he didn't see any of his girls, they must be on Royal Street."