[No. A128728. First Dist., Div. Three. May 5, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
SEAN ALI GRANT, Defendant and Appellant.

108

COUNSEL

Matthew A. Siroka, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit, Laurence K. Sullivan and Alisha M. Carlile, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**JENKINS, J.**—Following a jury trial, defendant Sean Ali Grant was convicted of pimping (Pen. Code,[1] § 266h, subd. (a)) (hereinafter section 266h(a)), assault with a deadly weapon (§ 245, subd. (a)(1)), corporal injury to a cohabitant (§ 273.5, subd. (a)), and false imprisonment by violence (§ 236). He was sentenced to an aggregate term of five years in state prison.

Grant challenges only his conviction for pimping, which was based on an allegation that he "did unlawfully and knowing [a person] to be a prostitute, live and derive support and maintenance in whole or in part from the earnings and proceeds of said person's prostitution." He contends the prohibited conduct for which he was convicted violates his substantive due process right under the Fourteenth Amendment because it criminalizes a person's cohabitation in the household of a known prostitute. We disagree, and accordingly, affirm the conviction for pimping.

## FACTUAL AND PROCEDURAL BACKGROUND

Grant was charged with one felony count of pimping in that on or about March 12, 2009, he did "unlawfully," and knowing Burgundi Selvin "to be a prostitute," "live and derive support and maintenance in whole or in part from

---

[1] All further unspecified statutory references are to the Penal Code.

the earnings and proceeds of [Selvin's] prostitution." At a jury trial held in July 2009, the following evidence was presented relating to the pimping charge.

Grant and Selvin met in 2007 and began an intimate dating relationship as boyfriend and girlfriend. On March 12, 2009, Selvin asked the police to come to the apartment she was then sharing with Grant to assist her in removing some of her possessions. After the police entered the apartment, Grant attempted to stop Selvin from removing her possessions. Grant was angry Selvin had called the police. He opened the bedroom window and jumped from the second-story apartment to the ground. After the police arrested Grant, they took him to the hospital for treatment of his injuries sustained in the jump.

In interviews with the police, Selvin said she and Grant had an altercation during which he physically attacked her. She also said she worked as a prostitute and she and Grant were "living solely off the proceeds of her prostitution." Neither Selvin nor Grant had any other jobs. Grant took photographs of Selvin that appeared in Internet advertisements, he arranged for the Internet advertisements of Selvin's prostitution services and he secured an exclusive cell phone number that customers used to contact Selvin. The police confirmed that the telephone number in the Internet advertisements rang to Selvin's cell phone, and she identified herself in the photographs in the advertisements. Selvin described her arrangement with Grant: He was present and hiding in a closet in the apartment while Selvin performed acts of prostitution with customers. After the customers left, Grant would take the money that had been left by the customers on a counter in the apartment. Selvin was upset that Grant was keeping some or all of her earnings from prostitution, and the money was not being "fairly distributed." Grant took money that Selvin had received as a tax refund and he spent money on himself. He bought items, such as a laptop, for both of them but then limited her access to those items.

In interviews with the police, Grant said Selvin was mad at him because he was sleeping with another girl. He also said Selvin "was a bona fide ho," she "hos herself out, [and] . . . he's just a photographer." Grant denied that he stayed in the apartment while Selvin performed acts of prostitution, he "actually would leave the apartment while she would do her thing." Grant also said Selvin "was getting all her money," or "she was getting all the money."

At trial, Selvin, testifying pursuant to a subpoena, admitted she did not remember everything she told the police, but what she recalled telling the police was mostly lies. She specifically claimed she had lied to the police

about being a working prostitute and being physically assaulted by Grant. When questioned at trial, Selvin claimed she did "reception work," and "worked front desk at hotels." She had been physically assaulted by another girl who was with Grant in the apartment. Grant did not testify at trial.

## DISCUSSION

Section 266h(a) reads: "[A]ny person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution, or from money loaned or advanced to or charged against that person by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, or who solicits or receives compensation for soliciting for the person, is guilty of pimping . . . ."

Grant argues the prohibition against deriving support from the earnings of a known prostitute in section 266h(a) is unconstitutional because it deprives him of his right of association by prohibiting cohabitation with a known prostitute. According to Grant, the statute essentially prohibits "anyone from receiving any amount of money, for any reason, from a person they know to be a prostitute, regardless of whether the person knows the source of the funds" or has "the purpose to perpetuate the prostitution." He relies on cases decided by the United States Supreme Court, which (a) interpret the Fourteenth Amendment's "guarantee of 'due process of law,' to include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest" (*Reno v. Flores* (1993) 507 U.S. 292, 301–302 [123 L.Ed.2d 1, 113 S.Ct. 1439]; see *Collins v. Harker Heights* (1992) 503 U.S. 115, 125 [117 L.Ed.2d 261, 112 S.Ct. 1061]; *Youngberg v. Romeo* (1982) 457 U.S. 307, 320 [73 L.Ed.2d 28, 102 S.Ct. 2452], citing *Poe v. Ullman* (1961) 367 U.S. 497, 542 [6 L.Ed.2d 989, 81 S.Ct. 1752] (dis. opn. of Harlan, J.)), and (b) concern " 'marriage, procreation, contraception, family relationships, and child rearing and education' " that "identify certain zones of privacy in which certain personal relationships or decisions are protected from government interference" (*Roberts v. United States Jaycees* (1984) 468 U.S. 609, 631 [82 L.Ed.2d 46, 104 S.Ct. 32442] (conc. opn. of O'Connor, J.); see *Lawrence v. Texas* (2003) 539 U.S. 558, 567, 573–574 [156 L.Ed.2d 508, 123 S.Ct. 2472] (*Lawrence*) [noncommercial sexual conduct between consenting adults in private home]; *Eisenstadt v. Baird* (1972) 405 U.S. 438, 440, 453 [31 L.Ed.2d 349, 92 S.Ct. 1029] (*Eisenstadt*) [contraception]; *Meyer v. Nebraska* (1923) 262 U.S. 390, 399 [67 L.Ed. 1042, 43 S.Ct. 625] (*Meyer*) [child rearing and education]).

■ However, unlike the United States Supreme Court's recognition of certain fundamental liberties in *Lawrence, supra,* 539 U.S. at pages 575–577, *Eisenstadt, supra,* 405 U.S. at pages 440, 453, 458 and *Meyer, supra,* 262 U.S. at page 399, with which we have no quarrel, we are here concerned with a prohibition related to commercial sexual conduct. The statute, in pertinent part, only "proscribes living or deriving support in whole or in part (1) from earnings or proceeds of the prostitution of [a person], or (2) from money loaned to [the prostitute], advanced to [the prostitute], or charged against [the prostitute] by any one of three specified persons. . . . It is clear therefore that the section as a whole is designed to discourage [a person] from . . . receiving material gain from the practice of prostitution." (*People v. Smith* (1955) 44 Cal.2d 77, 79–80 [279 P.2d 33].) "Any liberty interest which . . . persons might have in non-commercial and consensual . . . activity conducted between themselves in an atmosphere of privacy . . . would be personal to themselves and certainly would not extend to a third party, such as the defendant, charged with . . . pimping. Such [an] offense[] [is] directed at curbing the exploitation of commercial prostitution practiced by others and do[es] not involve the offender's personal interest[s] . . . ." (*People v. Mason* (Colo. 1982) 642 P.2d 8, 12–13, citations omitted.)[2]

■ In the absence of a fundamental liberty interest, we review the constitutionality of the challenged portion of section 266h(a) to determine

---

[2] At oral argument, Grant conceded he is not challenging the constitutionality of the pimping statute because of the way it was applied to his conduct in this case. But he argues he should be permitted to mount a facial constitutional challenge that the statute is overbroad based on hypothetical situations that are not before us. We disagree. In *United States v. Salerno* (1987) 481 U.S. 739 [95 L.Ed.2d 697, 107 S.Ct. 2095], our Supreme Court stated: "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the *First Amendment*." (*Id.* at p. 745 (lead opn. of Rehnquist, C. J.), italics added.) The exception for important First Amendment freedoms "is allowed because of the 'danger of tolerating, in th[at] area . . . , the existence of a penal statute susceptible of sweeping and improper application.' [Citations.] [¶] . . . [H]owever, . . . invalidation of a statute for facial overbreadth is an extreme remedy, and has been used only sparingly and as a last resort. [Citations.] In this case, neither the interests claimed to be at stake nor the nature of the statute's alleged infringement on those interests warrants such extreme relief." (*People v. Stage* (1978) 195 Colo. 110, 113 [575 P.2d 423, 425]; see *id.,* 575 P.2d at p. 424 [pimping statute upheld against a challenge it infringed on "First Amendment freedoms of 'economic association' by 'chilling' the general public's freedom to transact business with all people, including prostitutes"].) On this record, Grant has failed to meet his burden of demonstrating that section 266h(a)'s prohibition against deriving support from the earnings of a known prostitute "must be discarded *in toto* because some persons' arguably protected conduct may or may not be caught or chilled by the statute." (*Broadrick v. Oklahoma* (1973) 413 U.S. 601, 618 [37 L.Ed.2d 830, 93 S.Ct. 2908].)

whether it bears some rational relationship to a valid state interest. "Generally, the constitutional guaranty of substantive due process protects against arbitrary legislative action; it requires legislation not to be 'unreasonable, arbitrary or capricious' but to have 'a real and substantial relation to the object sought to be attained.' [Citation.] Thus, legislation does not violate substantive due process so long as it reasonably relates 'to a proper legislative goal.' [Citations.]" (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125 [278 Cal.Rptr. 346, 805 P.2d 300].) As we now discuss, we conclude the statutory prohibition of deriving support from the earnings of a known prostitute is related to a proper legislative goal, and hence, is constitutional.

■ We find untenable Grant's argument that section 266h(a) impermissibly forbids him from accepting earnings from a known prostitute. At issue here is to what extent the Legislature may control " 'those vocations which minister to and feed upon human weaknesses, appetites, and passions,' " such as pimping, which " 'affect directly the public health and morals.' " (*People v. Hassil* (1930) 341 Ill. 286, 289 [173 N.E. 355, 356].) "Where the public interest is thus involved, preferment of that interest may extend even to the destruction of the property interest of the individual. [Citation.] Considered in relation to the evil against which it is directed, the statutory provision here drawn into question is an undeniably proper exercise of legislative power. [Citations.]" (*Ibid.*) In enacting the challenged prohibition, our Legislature may well have reasoned that (a) a person deriving support from the earnings of a known prostitute would know or would reasonably be expected to know the source of the funds (see *People v. Fuski* (1920) 49 Cal.App. 4, 7 [192 P. 552] [failure of indictment charging pimping to include a specific allegation that defendant knew money for support was derived from acts of prostitution was not fatal defect as "no one would have any difficulty in understanding from the indictment as a whole that such was the intended charge of the pleader"]); and (b) criminal liability could be avoided only if a defendant demonstrated either a lack of knowledge that the person was a prostitute, the funds were not derived from acts of prostitution, or the funds were not being used for support and maintenance in whole or in part. (See, e.g., *People v. Tipton* (1954) 124 Cal.App.2d 213, 217–218 [268 P.2d 196]; *People v. Coronado* (1949) 90 Cal.App.2d 762, 765 [203 P.2d 862]; *People v. Simpson* (1926) 79 Cal.App. 555, 559 [250 P. 403]; see also *State v. Cashaw* (1971) 4 Wn.App. 243, 251–253 [480 P.2d 528, 533–534] [offense prohibiting living with or accepting earnings of prostitute does not require the People to prove defendant's knowledge of prostitute's activities as a prostitute; lack of such knowledge is an affirmative defense].)

■ Grant's argument that the state's interest in suppressing prostitution can be adequately protected by the other proscribed behavior in section 266h(a), and other statutes that adequately proscribe behavior that promotes

or facilitates prostitution is not well founded. Rather, "[i]t is . . . well established that, when a State exerting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction separately considered is innocuous it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the Government. [Citations.] With the wisdom of the exercise of that judgment the court has no concern; and unless it clearly appears that the enactment has no substantial relation to a proper purpose it cannot be said that the limit of legislative power has been transcended. To hold otherwise would be to substitute judicial opinion of expediency for the will of the legislature, a notion foreign to our constitutional system." (*Purity Extract Co. v. Lynch* (1912) 226 U.S. 192, 201–202 [57 L.Ed. 184, 33 S.Ct. 44].) "Once it is established that the general prohibition furthers the legislative goal, the Legislature has wide discretion in determining what limits will be set on the prohibition. [Citation.] As long as the statute rationally serves its purpose, it is not made arbitrary or capricious because it might have been drawn more narrowly or widely." (*People v. Mitchell* (1994) 30 Cal.App.4th 783, 798 [36 Cal.Rptr.2d 150]; see *Hale v. Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512] ["availability of less drastic remedial alternatives" does not invalidate a statute].)

We also see no merit to Grant's argument that section 266h(a) should be stricken as unconstitutionally overbroad because it "insufficiently specifies the nature of the association it seeks to criminalize," and, therefore, steps "too far into the very core of our families and relationships." The pimping statute is "sufficiently clear to inform persons of ordinary intelligence of the character of the prohibited conduct and to permit them to conform their conduct to the requirements of law. [Citations.]" (*People v. Mason, supra*, 642 P.2d at p. 13.) To establish the offense of pimping by deriving support from the earnings of a known prostitute, the People must demonstrate that "the money acquired [came] from the earnings of the illicit . . . [prostitution], and [was] used toward the recipient's support or maintenance." (*People v. Coronado, supra*, 90 Cal.App.2d at p. 767.) Although section 266h(a) does not expressly contain a specific element that a person deriving support have knowledge of the source of the prostitute's funds, such a requirement has been implied by the courts. (*People v. Tipton, supra*, 124 Cal.App.2d at pp. 217–218; *People v. Coronado, supra*, 90 Cal.App.2d at p. 765; *People v. Simpson, supra*, 79 Cal.App. at p. 559; *People v. Fuski, supra*, 49 Cal.App. at

p. 7.)[3] Thus, *the statutory prohibition does not preclude a person from accepting a known prostitute's funds gained from the prostitute's lawful activities or for purposes other than the person's support and maintenance.* (*Allen v. Stratton* (C.D.Cal. 2006) 428 F.Supp.2d 1064, 1072, fn. 7 ["a natural reading of [s]ection 266h does not support its application to . . . an individual, such as a psychologist, for example, who provides a legitimate professional service to a prostitute. In such circumstances, even if paid with proceeds earned from prostitution, the psychologist derives his support from his own performance of services, and not directly from the prostitute's earnings"]; *People v. Reitzke* (1913) 21 Cal.App. 740, 742 [132 P. 1063] [court approved jury instruction that a legitimate defense to pimping is that prostitute "loaned and advanced to the defendant certain sums of money for the purpose of going into the saloon business or other business, or for any other purpose except the purpose of being supported or maintained by the [prostitute]"].)

▪ Nor does "a natural reading" of section 266h(a) support "its application to a child who derives his support from his mother's prostitution." (*Allen v. Stratton, supra,* 428 F.Supp.2d at p. 1072, fn. 7; see § 4 [penal "provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice"]; *People v. Flores* (1996) 51 Cal.App.4th 1199, 1204 [59 Cal.Rptr.2d 637] [penal statute is to be given a "reasonable and commonsense construction"].)

Even if section 266h(a) may be as broadly construed as Grant contends, a prohibition against deriving support from the earnings of a known prostitute would assist "greatly in the desired result" of the "suppression of prostitution." (*State v. Green* (1942) 60 Ariz. 63 [131 P.2d 411, 412].) "If a prostitute knows that no one in the state will accept any of her earnings, even for food and shelter, she is certainly much less likely to ply her trade within the state, and indeed, if all citizens obey the law, would be compelled either to cease her profession or remove to some other locality. The federal government has adopted this type of policy in regard to counterfeit bills, for no matter how lawful the consideration, the knowing receipt with intent of using counterfeit bills, or the passing of them to others are made offenses. [Citation.] In other words, the theory of the government is that the counterfeit money itself, to use the colloquial phrase, is 'hot' and will burn anyone whom it touches. If the earnings of a prostitute are placed in the same category, it is obvious that it will be far more difficult for her to carry on her profession." (*Ibid.*)

---

[3] Grant cites to *People v. McNulty* (1988) 202 Cal.App.3d 624 [249 Cal.Rptr. 22] (*McNulty*), for the proposition that a person need not know the money he receives is the proceeds of prostitution in order to be convicted of pimping under section 266h(a). However, *McNulty* holds only that the statutory offense of pimping is a general intent crime as opposed to a specific intent crime. (202 Cal.App.3d at p. 631.) Unlike the cases cited in the text of this opinion, *McNulty* did not address the issue of whether a defendant must know that the source of the funds he receives is the proceeds of prostitution.

We conclude our discussion by noting that since its enactment one hundred years ago, our statute outlawing pimping has included a prohibition against deriving support from the earnings of a known prostitute. (Stats. 1911, ch. 15, § 1, p. 10.)[4] This prohibition is neither novel nor unprecedented as the same or essentially similar language has been validated as a necessary means to suppress prostitution by legislatures and decisions of the courts in other states. (See, e.g., ordinances or statutes discussed in *State v. Green, supra*, 131 P.2d at pp. 411–412; *People v. Mason, supra*, 642 P.2d at pp. 11–13; *People v. Stage, supra*, 575 P.2d at pp. 424–425; *Eaton v. State* (Fla.Dist.Ct.App. 1986) 481 So.2d 1254, 1255; *People v. Hassil, supra*, 173 N.E. at pp. 356–357; *People v. Morey* (1998) 230 Mich.App. 152, 155, 163–164 [583 N.W.2d 907, 912–913]; *State v. Cashaw, supra*, 480 P.2d at pp. 533–534].) "We cannot say that there is no basis for this widespread conviction. [¶] The State, within the limits we have stated, must decide upon the measures that are needful for the protection of its people, and having regard to the artifices which are used to promote [prostitution], it would constitute an unwarrantable departure from accepted principle to hold that the prohibition [against deriving support from the earnings of a known prostitution] was beyond its reserved power." (*Purity Extract Co. v. Lynch, supra*, 226 U.S. at p. 205.)

■ Because Grant has failed to demonstrate the prohibition against deriving support from earnings of a known prostitute is unconstitutional, we reject his argument that he was convicted on an unconstitutional theory of criminal liability. The jury here was instructed using the language in section 266h(a), without objection.[5] Additionally, the evidence in this case was sufficient to allow the jury to conclude beyond a reasonable doubt that Grant knew Selvin was a prostitute, "her earnings in question were secured from her prostitution," and Grant "derived support, in whole or in part, from such earnings knowing his receipts were derived from her prostitution." (*People v. Coronado, supra*, 90 Cal.App.2d at p. 765.) Accordingly, we affirm Grant's conviction for pimping.

---

[4] Statutes 1911, chapter 15, section 1, page 10, reads: "Any male person who, knowing a female person to be a prostitute, shall live or derive support or maintenance, in whole or in part, from the earnings or proceeds of the prostitution of such prostitute . . . , shall be guilty of a felony, to wit: pimping . . . ."

[5] The jury was told, in pertinent part: "To prove that the defendant is guilty of pimping, the People must prove that: [¶] 1. The defendant knew that Burgundi Selvin was a prostitute; [¶] AND [¶] 2. The money that Burgundi Selvin earned as a prostitute supported defendant, in whole or in part."

## DISPOSITION

The judgment is affirmed.

McGuiness, P. J., and Siggins, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 10, 2011, S193992.