Filed 12/18/13  P. v. Macauley CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B243963 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA121607) |
| v. | |
| MOHAMED NEWLOVE MACAULEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed in part, reversed in part, and remanded for resentencing.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez and Shawn McGahey Webb, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Mohamed Newlove Macauley found two 13-year-old girls, who had run away from home, in Long Beach, convinced them to get into his car, and set them up to work as prostitutes in Los Angeles.  The jury convicted him on two counts of pimping a minor under the age of 16 years (Pen. Code, § 266h, subd. (b)(2))[1] and two counts of pandering a minor under the age of 16 years (§ 266i, subd. (b)(2)).  The trial court sentenced Macauley to an aggregate state prison term of 14 years by selecting count 1 (pimping one of the girls) as the base term and imposing the upper term of eight years, and then imposing consecutive two-year terms (one-third the middle term of six years) on count 2 (pimping the other girl) and on counts 3 and 4 (the pandering counts).  On appeal, Macauley argues that one of his pimping convictions is not supported by sufficient evidence and that the trial court sentenced him in violation of section 654.  We affirm in part, reverse in part, and remand for resentencing.

## FACTUAL BACKGROUND

On the night of January 11, 2012 Macauley stopped at a street corner in Long Beach and demanded that S.T. and A.H., 13-year-old runaways, get into his car or there would be problems.  The girls complied.  Taquana Batty, whom Macauley identified as a prostitute, was seated next to Macauley.  Macauley told S.T. and A.H. he was going to drive them to Los Angeles where they would have to work as street prostitutes.  When they reached Los Angeles, Macauley parked on a dead end street and gave the girls condoms.  He told them to flag down cars and explained how much to charge for various sex acts and how to determine whether a potential customer was an undercover police officer.

---

[1]      All further statutory references are to the Penal Code.

S.T. and A.H. stood together on a corner of 60th and Figueroa Streets and began flagging down cars, while Batty watched them from across the street and Macauley remained in his car parked nearby. A.H. testified that when a car pulled up to the corner, either she or S.T. would speak with the male driver and agree on a price for a particular sex act. A.H. would then enter the front passenger seat and determine whether the potential customer was a police officer before having him drive a short distance to a secluded location to engage in either oral copulation or sexual intercourse. After the driver paid A.H., she would have him take her back to the corner, where she rejoined S.T. When A.H. returned, Macauley would call her on her cell phone and tell her to bring him the money. A.H. would then walk to Macauley's car and give him the money. That night, A.H. performed sex acts with four men. According to A.H., S.T. got into two different cars that night, each time leaving from and returning to the corner of 60th and Figueroa Streets. A.H. testified, "But other than that, I didn't actually see [S.T.] do anything."

There was also evidence that from late night on January 11 to early morning on January 12, 2012, Macauley made cell phone calls to A.H. and Batty. Macauley also sent a text message to Batty, asking "They good?" and Batty responded, "Okay." Macauley did not call or text S.T.

Los Angeles Police Officer Gregory Sovick was on routine patrol at approximately 5:00 a.m. on January 12, 2012, when he noticed S.T. standing alone on the corner of 60th and Figueroa Streets. S.T. was wearing a low-cut off-the-shoulder blouse and a very short skirt. For about 45 minutes, Sovick watched S.T. flag down several drivers and speak with them briefly, before they drove away. S.T. also spoke with an unidentified female. Sovick did not see S.T. get into any of the cars. Nor did Sovick see Macauley in the area that morning. Sovick detained S.T. on suspicion of engaging in street prostitution, conducted a warrant check, and learned she was a reported runaway. He transported S.T. to the police station, cited her for loitering with the intent to commit prostitution, and released her to her parents.

3

Los Angeles Police Detective Dan Morgan testified that S.T. told him in an interview two days later that Macauley was supposed to drive them home on the night of January 11, 2012, but instead he took them to 60th and Figueroa Streets and told them to "make some money." At some point during the interview, S.T. told Morgan she "had only worked at one location." At trial, S.T. denied that Macauley told her to make some money. S.T. testified that she was not doing anything on the corner except standing with A.H., who, on two occasions, was picked up, driven away, and subsequently returned by "some dude." The police arrested S.T. during one of A.H.'s absences. S.T. denied flagging down any cars or telling the police that any of the drivers offered to pay her to perform sex acts. S.T. testified some drivers stopped at the corner and asked if S.T. wanted to have "some fun," but she shook her head, "No," and waived them away. When asked on direct examination why she was standing on the corner, S.T. refused to answer.

Meanwhile, on the morning of January 12, Macauley drove Batty, A.H. and another girl to a swap meet and bought A.H. tights, earrings, and heels. Macauley then took A.H. to his house and had Batty take pictures of A.H. in her bra wearing the clothing from the swap meet. Macauley told A.H. that he wanted to put the pictures "on the internet and other people could look at [them] and he could get money off of those pictures."

At some point S.T. sent text messages to A.H. stating that she wanted to retrieve her iPod, which S.T. had left in Macauley's car the previous evening. The girls arranged to meet at a restaurant and exchange the iPod for clothes for A.H. as a part of a set-up with police. Macauley drove A.H. to the restaurant, and the police arrested Macauley and a companion in the parking lot.

4

**DISCUSSION**

A.  *There Is No Substantial Evidence To Support Macauley's Conviction for Pimping S.T.*

In evaluating whether there is sufficient evidence to support a conviction, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]'  [Citation.]  A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict."  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; accord, *People v. Mecano* (2013) 214 Cal.App.4th 1061, 1068.)

Section 266h, subdivision (b)(2), provides that "[a]ny person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution, or from money loaned or advanced to or charged against that person by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, or who solicits or receives compensation for soliciting for the person, when the person is a minor, is guilty of pimping a minor, a felony . . . .  [¶]  . . .  [¶]  (2)  If the person engaged in prostitution is under 16 years of age, the offense is punishable by imprisonment in the state prison for

5

three, six, or eight years." Thus, a defendant can commit the offense of pimping a minor in one of two ways: (1) by knowingly deriving support from the earnings of a minor's act of prostitution, or (2) by soliciting compensation. (*Wooten v. Superior Court* (2001) 93 Cal.App.4th 422, 446; *People v. McNulty* (1988) 202 Cal.App.3d 624, 630.) The statute defines pimping as a general intent crime (*People v. Grant* (2013) 195 Cal.App.4th 107, 116, fn. 3; *McNulty*, *supra*, at p. 630) and does not require that the accused receive the earnings directly from the prostitute, as opposed to knowingly deriving support from the prostitute's earnings collected by a third party. (*People v. Coronado* (1949) 90 Cal.App.2d 762, 766.)

In this case, the People did not proceed on the theory Macauley solicited or received compensation for soliciting S.T. The jury was instructed on the alternative theory that the People had to prove Macauley knowingly derived some support from S.T.'s earnings as a prostitute. The evidence is insufficient to support this theory.

Contrary to Macauley's contention, the evidence in the record does support an inference that S.T. engaged in sex acts for money. A.H. testified that she observed S.T. get into a car, leave, and return "at least two times before she got arrested." S.T. admitted to police that she had "worked at one location" prior to her arrest, and Batty sent a text message to Macauley that the girls were "okay." After her parents picked up S.T. from the police station, they took her to the doctor. This evidence supports a reasonable inference that S.T. engaged in acts of prostitution.

The evidence in the record, however, does not support an inference that Macauley directly or indirectly ever received, and thereby derived support from, S.T.'s prostitution earnings. A.H. never testified that she received any money from S.T. or that S.T. gave any money to either Batty or Macauley. There is no evidence from which a jury could reasonably infer that S.T. gave Macauley any proceeds she may have earned that night. (See *People v. Moore* (2011) 51 Cal.4th 386, 406 ["[t]hat an event *could* have happened, however, does not by itself support a deduction or inference it did happen"]; *People v. Kunkin* (1973) 9 Cal.3d 245, 250 ["'[e]vidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction'"].)

6

The People (and initially Macauley) requested that if we find the evidence insufficient to support a conviction of Macauley for pimping S.T., we modify the judgment pursuant to sections 1181, subdivision 6, and 1260 by reducing the conviction for pimping S.T. (count 1) to attempting to pimp S.T.[2]  In *People v. Bailey* (2012) 54 Cal.4th 740 the Supreme Court recognized that under sections 1181, subdivision 6, and 1260 "an appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense." (*Bailey*, *supra*, at p. 748.)  The Supreme Court held, however, that an appellate court cannot modify a judgment of conviction "where the attempted offense includes a particularized intent that goes beyond what is required by the completed offense." (*Id.* at p. 753.)  Therefore, the Supreme Court held that the Court of Appeal could not modify a conviction for escape from prison (for which there was insufficient evidence) to attempted escape because escape is a general intent crime and attempted escape is a specific intent crime and "not necessarily included in the offense of escape." (*Id.* at p. 752.)

Here, pimping is a general intent crime.  (See *People v. Grant*, *supra*, 195 Cal.App.4th at p. 116, fn. 3; *People v. McNulty*, *supra*, 202 Cal.App.3d at p. 630.)  Attempted pimping is a specific intent crime.  (See § 21a; *People v. Kipp* (1998) 18 Cal.4th 349, 376 ["[a]n attempt to commit a crime requires a specific intent to commit the crime and a direct but ineffectual act done toward its commission"]; accord, *People v.*

---

**2**     Section 1181, subdivision 6, provides the court may grant a new trial "[w]hen the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed."  Section 1260 provides that "[t]he court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed . . . and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

*Santana* (2013) 56 Cal.4th 999, 1012.) Therefore, attempted pimping is not a lesser included offense of pimping, and under *Bailey* we cannot modify the judgment to reduce the conviction on count 1 to attempted pimping.

In response to our request, the parties submitted supplemental briefing on the effect of *Bailey* on this court's authority, if there is insufficient evidence to support a conviction for pimping, to modify the judgment by reducing the conviction on count 1 from pimping to attempted pimping. The People argue that even if Macauley did not pimp S.T., his intent to do so "could hardly be more clear" from the evidence. The People argue that "although the jury was not instructed regarding specific intent or attempted pimping, nothing in the instructions precluded the jury from concluding that [Macauley] specifically intended to pimp [S.T.]."

Had the trial court improperly instructed the jury on attempted pimping by not including an instruction on specific intent, and the jury had convicted Macauley of attempted pimping, we could find the instructional error harmless. (See, e.g., *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1153-1154 [failure to instruct, in the penalty phase of a capital case, that interference with an executive officer's duties under section 69 requires a specific intent to interfere was harmless where "[t]here was evidence that defendant harbored the requisite specific intent"]; *People v. Jones* (1998) 67 Cal.App.4th 724, 727-728 [failure to instruct that intimidation of a victim in violation of section 136.1 is a specific intent crime was harmless where "the intent to dissuade [was] clear"].) In this situation, where the trial court did not instruct the jury on attempted pimping and the jury made no finding on attempted pimping, our authority to modify the judgment is statutorily authorized and limited by sections 1181, subdivision 6, and 1260. Under the holding of *Bailey*, these statutes do not allow us to modify the judgment on appeal to reflect a conviction of attempted pimping rather than pimping because the former is not a lesser included crime of the latter.

8

It is true that in responding to the Attorney General's argument in *Bailey* that "the absence of an instruction and of a specific intent finding on attempt to escape does not bar modification because the evidence was overwhelming," the Supreme Court stated that the evidence of intent in the case "was conflicting" and that the record contained "evidence that could lead a rational jury to find the element of specific intent lacking and such a finding would be consistent with the jury's verdict." (*People v. Bailey*, *supra*, 54 Cal.4th at p. 754.) We do not believe that these statements in the *Bailey* opinion authorize us to depart from the holding of the case that an appellate court cannot modify a conviction under sections 1181, subdivision 6, and 1260 to an attempt that is not a lesser included offense of the conviction. The Supreme Court in *Bailey* held that an appellate court cannot reduce a conviction from escape to attempt to escape because "attempt to escape is not a lesser included offense of escape." (*Bailey*, at p. 744). The Supreme Court did not hold that an appellate court cannot reduce a conviction from escape to attempt to escape because "attempt to escape is not a lesser included offense of escape," (*ibid.*) *unless the evidence supports a conviction for attempt to escape*. Nor did the Supreme Court in *Bailey* state that an appellate court cannot modify "an escape conviction to attempt to escape" (*id.* at p. 747), *unless the evidence of specific intent was overwhelming*. Therefore, we reverse rather than modify the conviction on count 1.

B.  *Macauley's Sentence Does Not Violate Section 654*

Section 654 prohibits separate punishment for multiple offenses arising from the same act or from a series of acts constituting an indivisible course of criminal conduct. (*People v. Williams* (2013) 57 Cal.4th 776, 781; *People v. Rodriguez* (2009) 47 Cal.4th 501, 507.)[3] "'Whether a course of criminal conduct is divisible and therefore gives rise

---

[3]  Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or

9

to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*Rodriguez*, at p. 507, italics omitted; accord, *People v. Lewis* (2008) 43 Cal.4th 415, 519.) "The trial court has broad latitude in determining whether section 654, subdivision (a) applies in a given case." (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1564.) "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence." (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

Macauley argues that his sentence violates section 654 because there is no basis in the evidence from which the court could have determined the pimping and pandering offenses as to each girl were divisible, and therefore subject to separate punishment. Because we have reversed the conviction on count 1, the section 654 issue with respect to count 1 (pimping S.T.) and count 3 (pandering S.T.) is moot. We conclude that section 654 does not apply to count 2 (pimping A.H.) and count 4 (pandering A.H.).

Criminalization of both pimping and pandering seeks to prevent prostitution. (*People v. Patton* (1976) 63 Cal.App.3d 211, 217; *People v. Hashimoto* (1976) 54 Cal.App.3d 862, 867.) Pimping is prohibited "to discourage any . . . person from . . . receiving material gain from the practice of prostitution." (*People v. Smith* (1955) 44 Cal.2d 77, 80.) Pandering is a specific intent crime; its commission requires the knowing and purposeful conduct of encouraging or otherwise influencing another person to become a prostitute. Whether the panderer is successful in his or her efforts is not an element of the crime.[4] (*People v. Zambia* (2011) 51 Cal.4th 965, 972, fn. 5, 980.) The

---

omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

[4]     Section 266i, subdivision (a), provides, in relevant part, that "any person who does any of the following is guilty of pandering . . . : [¶] (1) Procures another person for the purpose of prostitution. [¶] (2) By promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a

crime of pandering is distinct from the crime of pimping, and "[i]t is possible to commit one offense without committing the other." (*Id.* at p. 981, fn 7.)

Here, Macauley's effort to conflate the pimping and pandering offenses with respect to A.H. lacks merit. It is true that Macauley's successful efforts to recruit A.H. as a prostitute extended over many hours and many miles. There is substantial evidence, however, to support the jury's implied findings Macauley's conduct on January 11 and 12, 2012 was divisible, involving separate acts as to each girl, committed with separate objectives: Macauley committed the offense of pandering A.H. on January 11 in Long Beach, where he coerced her to get into his car and announced that she and S.T. were going to work as street prostitutes in Los Angeles.[5] Upon arriving in Los Angeles, Macauley pimped A.H. by demanding and receiving her illicit earnings. The pandering offenses were thus separated from the pimping offense by time, location, conduct, and motive.

Finally, Macauley argues that he is entitled to a single punishment under section 654 for his pimping and pandering convictions because his actions constituted a continuing course of conduct with the sole objective of achieving financial gain. The Supreme Court has rejected such an argument as "akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts," which would "preclude punishment for otherwise clearly separate offenses" and "would violate [section 654's] purpose to insure that a defendant's punishment will be commensurate with his culpability." (*People v. Perez* (1979) 23 Cal.3d 545, 552; see, e.g., *In re Noelle M.* (2008) 169 Cal.App.4th 193, 195, 197 [minor's argument that five sales of methadone

---

prostitute." Section 266i, subdivision (b), provides: "Any person who does any of the acts described in subdivision (a) with another person who is a minor is guilty of pandering . . . : [¶] . . . [¶] (2) If the other person is under 16 years of age, the offense is punishable by imprisonment in the state prison for three, six, or eight years."

5    Macauley also engaged in acts of pandering on January 12 in Los Angeles by taking A.H. to the swap meet for clothes and jewelry, and by photographing A.H. at his home.

pills to other minors during a football game constituted "'an indivisible course of conduct'" was "too broad for purposes of section 654 because her culpability increased with each illegal act of selling the methadone pills"]; *People v. Neder* (1971) 16 Cal.App.3d 846, 853-854 [although defendant's multiple uses of a stolen Sears credit card "were incident to the fundamental objective of taking goods from Sears by use of the credit card and by forging the sales slips . . . this objective is too broad to tie the separate acts into one transaction" for purposes of section 654].) The intent and objective of achieving financial gain is "much too broad and amorphous to determine the applicability of section 654." (*Perez*, *supra*, at p. 552.) The trial court did not sentence Macauley in violation of section 654.

**DISPOSITION**

The conviction on count 1 is reversed. The convictions on counts 2, 3, and 4 are affirmed, and the matter is remanded for resentencing on those counts.

SEGAL, J.*

We concur:

WOODS, Acting P. J.

ZELON, J.

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12